O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOUIS GOMEZ, | Case No. CV 16-04115-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Louis Gomez ("Plaintiff") appeals the Commissioner's final decision denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

In December 2011, Plaintiff filed applications for DIB and SSI alleging disability beginning on November 1, 2010. Administrative Record ("AR") 182-95, 204-06. After his applications were denied, he requested a hearing before an administrative law judge ("ALJ"). AR 129-46, 208. At his May 7, 2014 hearing, the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel. AR 7.

On July 22, 2014, the ALJ denied Plaintiff's claim for benefits. AR 50, 54-55. He found that Plaintiff had the severe impairments of a psychotic disorder not otherwise specified, polysubstance abuse in remission, and reduced right-eye vision. AR 55. The ALJ found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. AR 55-56. He noted that Plaintiff had moderate restrictions in activities of daily living, social functioning, and concentration, persistence, or pace. AR 56. He found no episodes of decompensation for an extended duration while Plaintiff complied with medical advice. Id.

Despite those impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to perform simple, routine tasks not requiring binocular vision, with occasional contact with coworkers and supervisors." AR 57.

Based on this RFC, the ALJ found that Plaintiff could perform his past relevant work as a warehouse worker, as his employer had accommodated his vision problems. AR 65. In the alternative, the ALJ relied on the VE's testimony to find that Plaintiff could perform the requirements of representative unskilled occupations including vegetable harvester and grocery bagger. Id. Noting that Plaintiff could perform jobs that existed in significant

numbers in the national economy, the ALJ found that Plaintiff was therefore not disabled. Id.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. AR 1-5; see 20 C.F.R. §§ 404.984, 416.1584. Plaintiff then sought review in this Court. Dkt. 1.

## II.
## DISCUSSION

Plaintiff argues that the ALJ improperly (1) rejected the opinion of Plaintiff's treating psychiatrist, (2) discredited testimony by Plaintiff and statements from his wife, and (3) failed to base his step two and RFC findings on substantial evidence. See Joint Stipulation ("JS") at 2. For the reasons discussed below, the Court finds that the ALJ failed to provide sufficient reasons for rejecting the treating psychiatrist's opinion but validly discredited Plaintiff's testimony and his wife's statements. Because the Court finds that the ALJ's error warrants remand, it does not reach whether substantial evidence supported the RFC findings.

**A.  Plaintiff's Treating Psychiatrist**

    **1.  Relevant Facts**

Dr. Solomon Mirakhor saw Plaintiff sixteen times between February 16, 2012 and January 9, 2014. AR 295-314, 362-73. The record includes five medical source statements from Dr. Mirakhor. On December 5, 2011, he stated that Plaintiff had a chronic and lifelong mental impairment that rendered him unable to work. AR 374. On May 31, 2012, he noted that Plaintiff had a panic disorder without agoraphobia and a major depressive disorder with psychotic features. AR 292. Dr. Mirakhor opined that Plaintiff was making "good progress" in functioning and taking his medication, that he had "good" abilities to carry out simple and complex instructions, maintain concentration, and perform activities within a regular schedule, and that he

had "fair" abilities to complete a normal work schedule and respond appropriately to changes in a work setting. AR 294.

On September 24, 2012, Dr. Mirakhor noted that Plaintiff had seventeen signs and symptoms of mental impairments, Plaintiff's prognosis was guarded, and he would likely miss more than three days of work per month due to his mental impairments. AR 284-87. Dr. Mirakhor also determined that Plaintiff had "fair" abilities, meaning that his "[a]bility to function in this area is significantly limited . . . but not precluded" in fifteen work functioning areas and that he had "[n]o useful ability to function" in five other work functioning areas. AR 287-90. On May 8, 2014, Dr. Mirakhor found that Plaintiff was "markedly limited" in both his ability to withstand work pressure and interact with supervisors, co-workers, and the public. AR 376. He also found that Plaintiff was "moderately limited" in his ability to carry out simple and complex instructions and concentrate for two-hour increments. AR 376. In a medical opinion from May 8, 2014, Dr. Mirakhor determined that Plaintiff was precluded from working fifteen percent or more of an eight-hour workday in 24 areas of work functioning. AR 378. The VE at Plaintiff's hearing testified that such limitations would preclude all work. AR 37-39.

Dr. Lee, a consulting examiner, conducted a psychiatric examination of Plaintiff on April 22, 2012. AR 276. His notes include Plaintiff's report of "a long history of anxiety, anger issues, mood swings, and irritability" and monthly appointments with Dr. Mirakhor. Id. Plaintiff also reported experimenting with "marijuana and amphetamines around the age of 18," and that "he had 'a bad trip' . . . and he experienced vivid hallucinations, both visual and auditory, as well as intense paranoid delusions . . . ." AR 277. Plaintiff told Dr. Lee that he feared that this "damaged [his] brain." Id. He further reported that he had been "sober from marijuana and amphetamines for the past 'several years,'" and had not been to a drug rehabilitation program.

4

Id. Dr. Lee noted that "[t]here was no evidence that the [Plaintiff] was under the influence of illicit substances during this interview." AR 278. He also documented reports of frequent "vivid auditory and visual hallucinations since the age of 18," as recently as two weeks before the examination. AR 279.

Dr. Lee diagnosed Plaintiff with a psychotic disorder not otherwise specified and drug abuse in remission. AR 280. He determined that the symptoms were "relatively mild-to-moderate," the problem was "treatable," and the likelihood of recovery was "fair-to-good." AR 280. He opined that Plaintiff's "psychiatric symptoms are related to his history of amphetamine abuse, even though [Plaintiff] reports that he has been sober for several years." AR 280. He found Plaintiff mildly impaired in his ability to interact with supervisors, co-workers, and the public, work consistently without special instructions, maintain regular attendance in the workplace, and deal with stress encountered in the workplace. AR 281. Dr. Lee found no impairment in the ability to perform both simple and complex tasks. Id.

The ALJ rejected Dr. Mirakhor's opinions in favor of the opinion of Dr. Lee and two non-examining state-agency consultants, finding that their opinions were "more consistent with the record as a whole." AR 64. He opined that Dr. Mirakhor's opinion was "inconsistent with the longitudinal record, and [was] inconsistent with his own clinical record notes." Id. The ALJ emphasized that Dr. Mirakhor "did not have knowledge of [Plaintiff's] history of abuse of marijuana and methamphetamines," which "significantly weaken[ed] his opinion." Id. The ALJ found Dr. Lee's opinion "consistent with the longitudinal record, including the clinical record of Dr. Mirakhor," and that the two non-examining consultants "support the opinion of Dr. Lee," thus granting their opinions "great" weight. Id. The ALJ limited Plaintiff's RFC to simple, repetitive tasks and occasional interaction with others. Id.
///

### 2. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).[2] A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect at the time of the ALJ's August 2014 decision.

the record." Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).

   3. **Analysis**

The ALJ's primary reason for discrediting Dr. Mirakhor's opinions was because they were "inconsistent" with the "longitudinal record" and "his own clinical record notes." AR 64. But the record does not contain substantial evidence to support this conclusion. For example, Dr. Mirakhor's September 2012 medical source statement determined that Plaintiff had significant work limitations because of his paranoia, anxiety, hostility, racing thoughts, and mood swings. AR 284-91. The ALJ claimed that this was inconsistent with Dr. Mirakhor's "own clinical notes showing significant improvement, including absence of psychotic symptoms, normal memory, greatly improved sleep, lack of racing thoughts, and lack of flights of ideas." AR 62. But Dr. Mirakhor's clinical notes show that while some symptoms improved from one visit to the next, others worsened within the course of treatment. At various visits, Dr. Mirakhor found that Plaintiff was suspicious and paranoid, AR 298, 305, 307, 309; was anxious, AR 298, 305, 307, 309; heard voices and saw shadows at night, AR 303, 305, 313; had difficulty sleeping, AR 303, 311; and was angry, AR 298, 301, 303, 311, 313.

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a [plaintiff] is capable of working." Garrison, 759 F.3d at 1017. Instead, "[the treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace." Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001).

7

The record shows that over Plaintiff's sixteen visits with Dr. Mirakhor, his mental health symptoms fluctuated rather than consistently improved, as is typical of mental health patients. See AR 303, 309, 311; see also Garrison, 759 F.3d at 1017 (noting that "[c]ycles of improvement and debilitating symptoms are a common occurrence" when treating mental health patients). Other than Dr. Mirakhor's reports documenting periods of improvement, it is unclear what if anything else the ALJ relied on to conclude that Dr. Mirakhor's opinion was inconsistent with the longitudinal record.[3] Dr. Mirakhor's observations that Plaintiff enjoyed periods of improvement do not demonstrate that Plaintiff's impairments no longer had any effect on his ability to work, especially when considered in the context of other treatment notes that showed that Plaintiff's symptoms returned.

Having concluded that substantial evidence does not support one of the two reasons offered by the ALJ, the Court turns to the other reason. The ALJ also found that Dr. Mirakhor's opinion was "significantly weakened" by his lack of knowledge of Plaintiff's drug history. While there is little evidence to suggest that Dr. Mirakhor and Plaintiff ever discussed any past drug use, even if Plaintiff concealed his past drug use from Dr. Mirakhor, it is difficult to understand why the ALJ concluded that Dr. Mirakhor's lack of knowledge of drug use undermined his opinion. While an ALJ may deny benefits where a claimant's limitations would no longer be disabling if the claimant stopped using drugs or alcohol, past drug use is only relevant to the extent it contributed to the claimant's limitations. See 20 C.F.R. § 404.1535(b); Parra v. Astrue, 481 F.3d 742, 746-47 (9th Cir. 2007); Forsynthe v. Astrue, No. 10-

---

[3] Other than Dr. Mirakhor's reports, the record contained evidence of an emergency room visit in January 2013 for an anxiety attack. AR 322. Such a visit would be consistent with Dr. Mirakhor's notes reflecting Plaintiff's anxiety and panic attacks.

8

01515, 2012 WL 217751, at *8-9 (E.D. Cal. Jan. 24, 2012) (holding that ALJ erred in finding "that Plaintiff's past use of methamphetamine" prohibited award of benefits where ALJ "did not make any findings that Plaintiff's drug use contributed to her limitations"). But the ALJ never concluded that prior drug use contributed to Plaintiff's impairments. And if past drug use was not a cause of Plaintiff's limitations, then it is hard to understand why Dr. Mirakhor's lack of knowledge of that drug use undermines his opinion about Plaintiff's ability to work, especially his assessments of Plaintiff's ability to withstand work pressures and interact with supervisors, co-workers, and the public.

Because substantial evidence does not support the ALJ's conclusion that Dr. Mirakhor's opinions were inconsistent with the longitudinal record, the only remaining specific and legitimate reason for the ALJ's discounting of Dr. Mirakhor's opinion is Dr. Mirakhor's lack of knowledge about Plaintiff's past drug use. But the Court cannot conclude that this reason was a basis for discounting the treating psychiatrist's opinions. Accordingly, the ALJ did not provide specific and legitimate reasons that are supported by substantial evidence in the record for discounting Dr. Mirakhor's opinions. Remand is therefore warranted.

**B.    Discrediting of Testimony by Plaintiff and Plaintiff's Wife**

Plaintiff argues that the ALJ improperly discredited his symptom testimony and his wife's statements. JS at 35-37, 41-42.

**1.    Relevant Facts**

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements regarding intensity, persistence, and the symptoms' limiting effects were "not entirely credible." AR 64. He found Plaintiff "less than fully credible" because:

> He has felony convictions and at least one or more of them

9

> involved dishonesty, detracting from his credibility. He failed to discuss his abuse of drugs with his treating psychiatrist. He has failed to comply with medical advice. He has failed to comply with prescriptive medication. He has failed to enter any drug rehabilitation program. He has left treatment and medication for long months at a time, with return of symptoms. He claimed he could not tell a nickel from a quarter or tell the difference between a one dollar bill and other denominations. He claimed he is not able to shave his face. He claimed he does not drive but then admitted he does drive.

AR 64.

The ALJ also noted that Ms. Gomez's statement had "little difference from the report her husband completed that day" and summarized her testimony without specifically describing her credibility. She completed identical written reports for her husband and herself. See AR 224-31, 237-44.

### 2. Applicable Law

In order to determine whether a plaintiff's testimony about subjective symptoms is credible, an ALJ must engage in a specific two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036.

If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the [plaintiff's] complaints." Brown–Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). The ALJ may consider, among other factors, a plaintiff's reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, unexplained or inadequately explained failures to seek treatment or to follow a prescribed course of treatment, his work record, and his daily activities. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (as amended); Smolen v. Chater, 80 F.3d at 1283-84, 1284 n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

    **3. Analysis**

        a.    Discrediting Plaintiff's Testimony

The ALJ offered at least two specific, clear and convincing reasons for discrediting Plaintiff's symptom testimony. First, Plaintiff served a four-month jail sentence for commercial burglary, which "is a crime involving moral turpitude because it satisfies the threshold of a crime indicating a readiness to do evil." Meredith v. Lopez, No. 10-1395, 2012 WL 2571225, at *9 n.1 (E.D. Cal. July 2, 2013) (citation omitted). An ALJ may find a plaintiff not credible based on convictions involving moral turpitude. See Albidrez v. Astrue, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007).

    Second, the ALJ validly discounted Plaintiff's testimony because he gave inconsistent statements about his ability to drive. Plaintiff's written report said he did not drive, but he testified that he drives when necessary. See AR 11, 236, 240. It was appropriate for the ALJ to consider this inconsistency when making his credibility findings, as Plaintiff's discrepancy undermines his complaints. See Brown–Hunter, 806 F.3d at 493. As both the burglary conviction and inconsistent testimony about driving affected Plaintiff's credibility, they constitute clear and convincing reasons for discounting

Plaintiff's testimony regarding his degree of pain.

    b.  Discrediting Ms. Gomez's Testimony

"When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" Valentine v. Comm'r, Social Sec. Admin, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted). However, "[w]here lay witness testimony does not describe any limitations not already described by the [plaintiff], and the ALJ's well-supported reasons for rejecting the [plaintiff's] testimony apply equally well to the lay witness testimony, it would be inconsistent with [the Ninth Circuit's] prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." Molina v. Astrue, 674 F.3d 1104, 1117 (9th Cir. 2012) (citing Valentine, 574 F.3d at 694).

Because Ms. Gomez's testimony "did not describe any limitations beyond those [Plaintiff] described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons . . . the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." Molina, 674 F.3d at 1122. Accordingly, the ALJ's failure to address Ms. Gomez's credibility was harmless.

**C.**  **<u>Failure to Fully Credit Opinions with the Greatest Weight</u>**

Plaintiff alleges that the ALJ failed to consider aspects of the three "purportedly-credited opinions into the RFC finding, without explanation." JS at 21-23. Dr. Young found "mild" or no restrictions where the ALJ found moderate ones, Dr. Hawkins determined that Plaintiff had anxiety and affective disorders rather than the ALJ's finding of an unspecified psychotic disorder, and Dr. Hawkins found several "moderate" limitations where the ALJ found none or mild limitations. JS 21-23, AR 56-57.

Despite these differences, the ALJ was not required to explicitly identify which findings were based on which medical opinion. Rather, the ALJ need only "synthesize and translate assessed limitations into an RFC assessment." Bustos v. Astrue, No. 11-1953, 2012 WL 5289311, at *5 (E.D. Cal. Oct. 23, 2012) (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)). While the ALJ improperly weighted the opinions, his synthesis and translation process was not flawed. He could find moderate difficulties based on Dr. Hawkins rather than Dr. Young. Moreover, because physicians did not agree on what Plaintiff's mental impairment was, it was most appropriate for the ALJ to label it an unspecified psychotic disorder. Therefore, Plaintiff is not entitled to relief on this claim of error.

**D.    Remaining Issue: Improper Questioning of the VE**

Plaintiff argues that the ALJ committed prejudicial error when he mistakenly asked the VE to consider a hypothetical person who was limited to "occasional[ ] contact with public and coworkers." AR 31, JS at 17-18. In reality, the ALJ's RFC limited Plaintiff to "occasional contact with coworkers and supervisors." AR 57, JS at 17-18. The Commissioner admits that this was error, but argues that the error was harmless because (1) the ALJ independently determined that Plaintiff could return to his prior job as a warehouse worker and (2) nothing in the Dictionary of Occupational Titles ("DOT") job descriptions for vegetable harvester or grocery bagger suggests that Plaintiff would have more than occasional interaction with supervisors. JS at 26-27.

Because the Court concludes that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Mirakhor's opinion, the Court does not reach the ALJ's error in questioning the VE. Upon remand, the ALJ may wish to consider this claim of error.

E.  **Remaining Issues**

Where, as here, the Court finds that the ALJ improperly discounted a physician's opinion, the Court has discretion as to whether to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act"). Here, remand is appropriate for the ALJ to fully and properly consider Dr. Mirakhor's opinion, and, if necessary, to more fully develop the record regarding Plaintiff's conditions and functional limitations.

///
///
///
///
///
///
///

# III.
# CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: November 15, 2017

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge